**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| MARCUS WAYNE T.,[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| v. | ) | |
| | ) | **No. 25-1227-JWL** |
| FRANK BISIGNANO, | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security

denying Social Security Disability Insurance (SSDI) benefits and Supplemental Security

Income (SSI) benefits pursuant to sections 216(i), 223, and 1614(a)(3)(A) of the Social

Security Act, 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3)(A) (hereinafter the Act).  Finding

no error in the Administrative Law Judge's (ALJ's) finding Plaintiff "requires the use of

a cane for ambulation and is able to use his free hand to carry small objects" (R. 16) (bold

omitted), the court ORDERS that judgment shall be entered pursuant to the fourth

sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.    Background**

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of disability claimants, it has determined to caption Social Security decisions using only the initial of the Plaintiff's last name.

Plaintiff protectively filed applications for SSDI and SSI benefits on January 11, 2023.  (R. 10, 213-14).  After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ purportedly determined Plaintiff needs "a cane only 'when ambulating' but not 'for balance' while standing."  (Pl. Brief 9) (without citation for the quoted matter).

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it."  I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting

Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses the error alleged in Plaintiff's Social Security Brief.

## II.    Discussion

Plaintiff expresses his argument, "The error in this case arises from the ALJ's unexplained conclusion that [Plaintiff] requires a cane only 'for ambulation,' but not 'for balance,' while standing in position."  (Pl. Br. 9-10) (citing and apparently quoting R. 16).  Plaintiff continues, "the ALJ failed to adequately address [Plaintiff's] need for a cane when she determined he required his cane 'for ambulation' but not 'for balance.' This error was significant because the need to use an assistive device only 'for ambulation,' versus needing such a device 'for balance' while standing is a vocationally significant difference."  Id, 10 (again citing and apparently quoting R. 16 and citing Soc. Sec. Ruling (SSR) 96-9p, 1996 WL 374185, at *7 (Soc. Sec. Admin. July 2, 1996)).  He argues that SSR 96-9p "explains that 'the occupational base for an individual who must

4

use such a device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment) may be significantly eroded.'" (Pl. Br. 11) (quoting 1996 WL 374185 at *7).

Plaintiff argues the record evidence "reflects that [he] requires the use of a cane 'for balance,' due to the neurological impairment in his spine that causes pain and weakness in both legs." Id. (citing R. 693, 697, 699, 702, 721, 723, 733, 734, 753, 755, 779, 784, 941). Plaintiff argues the ALJ credited the evidence for the need of a cane "for mobility" or "for ambulation" (quoting R. 21, 22) but "never recognized or addressed the distinction between the need for a cane 'for ambulation' versus 'for balance,' and as such, she never justified finding [Plaintiff] required the lesser accommodation." Id. 12.

Plaintiff's argument relies on a case from the U. S. District Court for the Western District of Missouri, Butterworth v. Kijakazi, 2022 WL 17975752 at 4-5 (W.D. Mo. Dec. 28, 2022). He argues that case should be controlling here because that court found error in failing to offer an explanation "for the ALJ's decision to credit the plaintiff's need for a cane to ambulate, but not for balance while standing," and also "explained why the distinction between using a cane for 'balance' and for 'ambulating' was material to the outcome of the plaintiff's disability determination." (Pl. Br. 12 - 14) (citing Butterworth at *4).

The Commissioner argues: there is no record evidence "that Plaintiff needed a cane to balance while standing;" that "when Plaintiff testified, he did not allege the need for a cane at all, whether walking or standing;" that "in his function report, while he reported he needed a cane, he did not indicate why he needed the cane;" and that "while

5

his physicians documented the need for a cane for ambulation, they did not indicate he needed a cane to balance while standing." (Comm'r Br. 3). He argues, therefore, that the ALJ was required to find that Plaintiff does not need a cane to balance. Id. (citing SSR 96-8p, 1996 WL 374184, *1, *3). He argues, "The absence of evidence distinguishes Plaintiff's case from Butterworth." Id.

In his Reply Brief, Plaintiff argues the Commissioner's assertion—that the record only documents balance issues when walking—is mere post hoc rationalization because, "The ALJ herself never articulated the counter-intuitive conclusion that all evidence of balance deficits documented within the record impacted [Plaintiff's] ability to walk but not stand." (Reply 3).

### A.      The ALJ's Relevant Findings

The ALJ assessed Plaintiff with the RFC for sedentary work, concluding Plaintiff can stand and/or walk only two hours in an eight-hour workday. (R. 16). She found "The claimant requires the use of a cane for ambulation and is able to use his free hand to carry small objects." Id. The ALJ noted MRI (Magnetic Resonance Imaging) was done of Plaintiff's lumbar and thoracic spine on December 2, 2022 and of his cervical spine on December 9, 2022. Id. 18. She noted that on December 29, 2022, the "imaging was reviewed; however, the findings did not suggest any reason why he was having such difficulty walking. The plan was to obtain an MRI of the brain (Exhibit B12F/27). This was performed on March 7, 2023, and was unremarkable (Exhibit B12F/8)." Id.

The ALJ noted that Plaintiff established care with the Herington Area Health Clinic on January 4, 2023, and his examination revealed an unsteady gate and a loss of

balance when transitioning from sitting to standing.  (R. 18) (citing R. 1056).  The ALJ

noted Plaintiff had an appointment with Salina Neurosurgery on March 31, 2023.  Id. 19.

She concluded:

> [Plaintiff] did have 3/5 weakness but otherwise a normal neurological
> exam without significant focal deficits appreciated.  Given his sudden
> drop like attacks and well as [sic] the possible described fasciculations
> [(small, brief, and involuntary muscle twitches)] of the quadriceps
> muscles, the claimant was referred to neurology for evaluation (Exhibit
> B10F/11).  It was also noted during this examination that the claimant
> used a cane for mobility.  His gait was described as shuffling, ataxic, and
> spastic (Exhibit B12F/16).

Id.  The ALJ noted that Plaintiff visited the emergency room on February 28, 2024,

for a right foot and great toe injury and it was reported, "His gait was normal; there

was no mention or observation of cane use during this presentation (Exhibit

B21F/4), and he was noted to be ambulatory (Exhibit B21F/5)."  Id.

The ALJ found that with the RFC assessed, Plaintiff is able to perform three

representative sedentary occupations with a specific vocational preparation level of 2;

hand painter/stainer, order clerk, and lens block gauger.  Id. 25.

### B.    Analysis

Contrary to Plaintiff's arguments, the ALJ did not find Plaintiff did not need a

cane for balance when standing.  Rather, she found that he needed a cane for ambulation

and left it there.  However, her discussion in the decision at issue makes it clear she was

aware of and accepted that Plaintiff had balance issues at least when going from sitting to

standing, but Plaintiff did not testify and no medical source recorded that Plaintiff

required the use of a cane when standing. Likely balance issues are one of the bases for

the ALJ's determination Plaintiff was limited to sedentary rather than to light exertional work despite the ability to lift and carry 20 pounds occasionally and 10 pounds continuously. (See R. 20) ("The residual functional capacity assessment is supported by the objective medical evidence and clinical findings, which do not fully corroborate the claimant's allegations of disabling impairments. … Additionally, during an emergency room visit on February 28, 2024, the claimant's gait was noted to be normal, and no mention of cane use was made, which further supports that the claimant retains the capacity for a range of sedentary work activities (Exhibit B21F/4).  Thus, the residual functional capacity accounts for the claimant's reported symptoms and limitations while also reflecting the objective findings in the medical record.").

Plaintiff's appeal to the Butterworth case is not helpful to his claim of error in the ALJ's failure to also find he requires the use of a cane for balance because that case is careful to rely upon factors in its decision which are not present in this case.  In Butterworth the Plaintiff, who appeared without representation, "testified that he relies on a cane to walk as well as to to [sic] stand and balance more generally."  2022 WL 17975752, at *2.  Here, Plaintiff, who was represented by counsel, did not testify and counsel did not argue that he needs a cane either for ambulation, for standing, or for balance, but the ALJ determined from the record evidence that Plaintiff requires a cane for ambulation.  Further, although Plaintiff argues his function report indicated he requires a cane "all the time" (Reply 2) (citing R. 310), that cannot be understood to compel the conclusion that a cane is required for balance because such a literal understanding would also require the use of a cane when sitting or lying down.

8

Moreover, the function report states that Plaintiff uses the aid of a walker, a wheelchair, and a cane, and that he uses "these aids all the time." (R. 310).

> The Butterworth court agreed with Mr. Butterworth:
>
> that the ALJ improperly analyzed Mr. Butterworth's reliance on a cane when crafting his RFC. And, even assuming that the ALJ implicitly concluded that Mr. Butterworth relied on a cane to stand and balance more generally, remand is appropriate. This is because the ALJ failed to analyze how the use of a cane to stand and balance would affect Mr. Butterworth's ability to perform the work that the ALJ identified at step 5.

2022 WL 17975752, at *2. Here, the court does not agree with Plaintiff that the ALJ improperly considered Plaintiff's reliance on a cane. The ALJ considered, discussed, and cited the record evidence respecting Plaintiff's use of a cane and concluded that he requires a cane for ambulation. Plaintiff's citation to record evidence suggesting balance issues does not require a different conclusion. The ALJ considered that evidence and decided differently. Moreover, the evidence cited does not compel a finding that Plaintiff requires a cane for balance when standing. At best the evidence suggests Plaintiff's balance issues may have a neurological base but Plaintiff has been diagnosed with musculoskeletal impairments but not a neurological impairment. Although Plaintiff was referred for a consultation with neurology, there is no record evidence he ever made it to that appointment.

Finally, the court in Butterworth found that even if one assumed the ALJ implicitly assumed the plaintiff relied on a cane to stand and balance in general, remand was nonetheless required because the ALJ failed to analyze how the plaintiff's use of a cane would affect the representative jobs upon which the ALJ relied at step five. The

work of which the ALJ found Mr. Butterworth capable was all light exertion work, requiring the ability to stand about six hours in an eight-hour workday.  2022 WL 17975752, at *4.  The court noted that there was no record "evidence that Mr. Butterworth could perform that job [(a blade balancer)], or any of the identified alternatives, with one hand occupied by a cane while standing in the work station.  For that reason, remand is necessary."  Id.

Here, the ALJ found Plaintiff capable only of sedentary work, requiring the ability to stand only about two hours in an eight-hour workday.  There is no workstation requiring standing while working. The ALJ found Plaintiff capable of using a cane for ambulation while using his free hand to carry small objects.  The vocational expert testified that the representative jobs here can be performed within those limitations. Plaintiff has not met his burden to point to record evidence that compels a finding that he has greater limitations than those assessed or that the ALJ's testimony is erroneous.  In other words, the ALJ drew the natural conclusion from the evidence before her and neither Plaintiff nor his counsel provided rationale, evidence, or argument to conclude otherwise.

Plaintiff has shown no error in the decision of the Commissioner.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated August 3, 2026, at Kansas City, Kansas.

s/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**